**UNSEALED**

9/9/14 ᴀᴋ

UNITED STATES District Court
Southern District of Texas
FILED

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# McALLEN DIVISION

SEP 0 4 2014

David J. Bradley, Clerk

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | Criminal No. **M-14-1386** |
| | § | |
| WILLIE CHESTER MITCHELL | § | |

## SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## THE MEDICAID PROGRAM

1.     The Texas Medical Assistance Program also known as the Texas Medicaid program (herein after referred to as "Texas Medicaid"), was implemented under the provisions of Title XIX of the federal Social Security Act and Chapter 32 of the Texas Human Resources Code, for the purpose of providing joint state and federal funds to pay for medical benefits items or medical services furnished to individuals of low income who were qualified and enrolled as Texas Medicaid recipients.   States desiring to participate in, and receive funding from, the federal Medicaid program were required to develop a "state plan" for medical assistance and obtain approval of the plan from the United States Department of Health and Human Services.   Upon approval of its state plan, each individual state administered its own Medicaid program, subject to the requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services and all other applicable state and federal laws.   Texas Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

1

2.      Texas Medicaid assigned every person qualified and enrolled as a Texas Medicaid recipient a unique personal Texas Medicaid identification number known as a Patient Control Number ("PCN").

3.      The Texas governmental agency known as the Health and Human Services Commission ("HHSC") was the single state Medicaid agency in Texas responsible, subject to oversight by the federal government, for administering the Texas Medicaid program at the state level.   Federal funding was only available to the Texas Medicaid program as long as the Texas Medicaid program complied with the terms and requirements of the state plan, the Social Security Act, the United States Department of Health and Human Services, and all other applicable state and federal laws, and with the rules and regulations established by both the federal government and the State of Texas pertaining to Texas Medicaid.

4.      The Texas Medicaid & Healthcare Partnership (hereinafter referred to as "TMHP") was under contract with HHSC to provide certain administrative functions such as provider enrollment, claims processing and payment, and published the Texas Medicaid Provider Procedures Manual which contained the rules and regulations of the Texas Medicaid program established by the state plan and by HHSC.   The Texas Medicaid Provider Procedures Manual, bulletins, and banner messages were distributed and available to all Texas Medicaid providers and contained the rules and regulations pertaining to Medicaid-covered services, and instructions on how to appropriately bill for services provided to Medicaid recipients.

5.      Texas Medicaid funds were intended to pay for covered medical services furnished to Texas Medicaid recipients, by enrolled Texas Medicaid providers, when such medical services were furnished in accordance with all of the rules, regulations, and laws which governed Texas Medicaid.   Covered Texas Medicaid services included medial services and procedures furnished

by physicians and other health care professionals in their offices; as well as certain products, supplies, and services used outside a physician's office such as diabetic and incontinent supplies, which were commonly known as Durable Medical Equipment (DME).

6.     A person or entity that desired to become a Texas Medicaid provider was required to submit an application and sign an agreement which included a promise to comply with all Texas Medicaid related laws and regulations.   Texas Medicaid assigned a unique Texas Provider Identifier ("TPI") number to each approved Texas Medicaid provider.   A person or entity with a TPI number could file claims, also known as bills, with Texas Medicaid to obtain reimbursement for covered medical services which were furnished to Texas Medicaid recipients in accordance with the rules, regulations, and laws pertaining to the Medicaid program.

7.     Texas Medicaid would only pay reimbursement for medical services, including DME, which were prescribed by the recipient's physician and medically necessary to the treatment of the recipient's illness, injury, or condition.   Texas Medicaid required that a completed "Home Health Services (Title XIX) Durable Medical Equipment (DME)/Medical Supplies Physician Order Form" prescribing the DME and/or supplies be signed and dated by a physician familiar with the Texas Medicaid recipient.   Texas Medicaid also required that said form had to be maintained by the DME provider and the prescribing physician in the recipient's medical record. In addition, Texas Medicaid required that, before submitting a claim for payment, the DME provider had to obtain a "DME Certification and Receipt Form" from the Texas Medicaid recipient.   The DME Certification and Receipt Form was to be signed by both the Texas Medicaid recipient and the DME provider certifying the date that the DME was received by the Texas Medicaid recipient and that the DME had been prescribed by a physician, received by the Texas

3

Medicaid recipient, properly fitted, and met the Texas Medicaid recipient's needs.   The DME

provider was required to keep that form on file in the patient's medical record.

       8.     To receive reimbursement from TMHP for medical services to recipients, Texas

Medicaid providers submitted or caused the submission of claims to TMHP, either directly or

through a billing company.   Claims could be submitted either in paper form or electronically.

Texas Medicaid providers could only submit claims on or after the "date of service" to the

recipient.   For DME, the date of services referred to the date on which the DME was delivered to,

and accepted by, the Texas Medicaid recipient.

       9.     Texas Medicaid DME suppliers/providers were required to submit their Texas

Medicaid claims on a standardized form commonly referred to as a "Form1500", "HCF 1500", or

"CMS 1500."   Certain specific information was required to be on each claim form, including but

not limited to the following:

      a.     the recipient's name and unique personal Texas Medicaid identification number (PCN);

      b.     the date of service;

      c.     the specific uniform code for the diagnosis of, or nature of, the Texas Medicaid recipient's illness, injury, or condition;

      d.     the specific uniform national Healthcare Common Procedure Coding System (HCPCS) code established by CMS to define and describe the DME for which payment was sought;

      e.     the name and unique physician identification number ("UPIN") or national provider identifier ("NPI") of the physician who prescribed or ordered the DME for which payment was sought;

      f.     all applicable modifier codes.

      10.    Modifier codes were sometimes required to provide additional information

regarding the DME, such as when the information provided by a HCPCS code descriptor needed to

be supplemented to identify specific circumstances that applied to the DME.   For example, a

"UE" modifier was used when the item identified by a HCPCS code was used equipment.   A

"NU" modifier was used for new equipment.   The "KX" modifier was used by providers to

represent to Texas Medicaid that the specific required documentation, such as the written

physician order, or the "Home Health Services (Title XIX) Durable Medical Equipment

(DME)/Medical Supplies Physician Order Form" and the "DME Certification and Receipt Form"

described in paragraph 7 above, were on file in the patient's medical record maintained by the

Texas Medicaid provider.

11.    DME providers in Texas were required to submit their Texas Medicaid bills or

claims to TMHP.   Although providers may have sometimes submitted claims in groups for

efficiency, every claim was considered individually.   Claims to Texas Medicaid were paid either

by paper check delivered to the United States Postal Service or by wire or radio transmissions, in

transactions known as electronic funds transfers.

12.    For each claim submitted, the Texas Medicaid provider certified, among other

things, that: (a) the information on the claim form was true, accurate, and complete; (b) the medical

services had been provided to the Texas Medicaid recipient; and (c) the medical services listed on

the claim were medically indicated and necessary to the health of the Texas Medicaid recipient.

13.    Texas Medicaid rules excluded some types of DME.   In addition, Texas Medicaid

placed monthly or yearly limits on some DME.   For example, various rules limited the quantity of

incontinent supplies that were allowed to any recipient each month.

## ILLUSIONS MEDICAL EQUIPMENT, ILLUSIONS MEDICAL EQUIPMENT II, L.L.C., AND THE DEFENDANT

14.    Defendant WILLIE CHESTER MITCHELL was a resident of Hidalgo County,

Texas and was the owner and operator of Illusion Medical Equipment and Illusion Medical Equipment II LLC.

15.    On or about November 27, 2007, defendant WILLIE CHESTER MITCHELL, on behalf of Illusion Medical Equipment, applied to be a provider in the Texas Medicaid program. Texas Provider Identifier (TPI) #1896375 was assigned to Illusion Medical Equipment.   National Provider Identifier (NPI) #1508082397 was assigned to Illusion Medical Equipment.

16.    On or about June 4, 2010, defendant WILLIE CHESTER MITCHELL, on behalf of Illusion Medical Equipment II LLC, applied to be a provider in the Texas Medicaid program. Texas Provider Identifier (TPI) #2125379 was assigned to Illusion Medical Equipment II LLC. National Provider Identifier (NPI) #1174752034 was assigned to Illusion Medical Equipment II LLC.

17.    Illusion Medical Equipment and Illusion Medical Equipment II LLC ostensibly provided durable medical equipment to Texas Medicaid recipients (hereinafter referred to as recipients) in Hidalgo County, Cameron County.

## TEXAS MEDICAID BILLINGS AND PAYMENTS

18.    From on or about December 1, 2007 through November 30, 2011, the defendant, WILLIE CHESTER MITCHELL, submitted or caused others to submit false or fraudulent claims in the approximate aggregate sum of $2,347,841.71 to Texas Medicaid, for durable medical equipment, which was not provided or was not properly provided to Texas Medicaid recipients. As a result of said false or fraudulent claims, Texas Medicaid paid the approximate aggregate sum of $2,088,473.67.

## SCHEME TO DEFRAUD

19.    In order to execute and carry out his illegal activities, the defendant, WILLIE CHESTER MITCHELL, committed the following acts:

(a)    The defendant submitted or caused others to submit claims with Texas Medicaid for reimbursement of durable medical equipment that was not provided or not properly provided.    Specifically, the defendant billed Texas Medicaid for incontinence supplies and diabetic supplies that were not delivered or only partially delivered to Texas Medicaid recipients.

(b)    The defendant billed Texas Medicaid for more supplies, including disposable under pads, adult pull ups, and alcohol prep pads, than that which were actually purchased from the distributors.

(c)    The recipients' signatures on the required delivery tickets were forged without authorization of the recipients.    The doctors' signatures on the required Title XIX forms were forged without their authorization.

(d)    The defendant used the Texas Medicaid number of a former employee to bill Texas Medicaid for diabetic and incontinence supplies which were not provided. The former employee, whose Texas Medicaid number was used, previously worked for Illusions Medical Equipment, but was never a client of the company. The former employee never received any incontinence supplies and did not give the company authorization to use her Texas Medicaid number.    The 11 delivery tickets purportedly containing her signature were forged without her authorization.    The Title XIX form was forged without authorization of her doctor.

(e)    The defendant directed his employees to deliver less supplies than that stated on the delivery tickets.    As the sole biller for Illusions Medical Equipment and Illusions Medical Equipment II LLC, the defendant used a spreadsheet to keep track of the discrepancies between what he billed Texas Medicaid for and what was actually delivered to recipients.

(f)    Former employees/witnesses, who noticed the false and fraudulent billings and scheme to defraud, brought the issues to the defendant's attention.    The defendant told them "not to worry about it" and continued to submit false and fraudulent billings.

(g)    During and in relation to his fraudulent conduct and to further his scheme and artifice to defraud Texas Medicaid, the defendant knowingly transferred, possessed, or used or knowingly caused others to transfer, possess, or use, without lawful authority, one of more means of identification of Texas Medicaid recipients which he used to execute his scheme and artifice to commit health care fraud.

## COUNTS ONE THROUGH SEVEN
## HEALTH CARE FRAUD

20.    The Grand Jury incorporates by reference paragraphs 1 through 19 as though fully

restated and re-alleged herein.

21.     Beginning on or about December 1, 2007 through November 30, 2011, the exact dates unknown to the Grand Jury, in the McAllen Division of the Southern District of Texas and elsewhere, the defendant,

**WILLIE CHESTER MITCHELL**

did knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health care benefit program known as Texas Medicaid, or to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit program known as Texas Medicaid, in connection with the delivery of, or payment for, health care benefits, items, or services.   Defendant submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated or caused each other and others to submit false and fraudulent claims to TMHP, for medical benefits, items, and services which were not provided, including, but not limited to the following:

| Count | Patient | Last 5 Digits of Patient Medicaid Number | Date of Alleged Service (On or about) | Date Billed (On or about) | Amount Billed | Reason Claim Was False and Fraudulent |
|-------|---------|------------------------------------------|----------------------------------------|----------------------------|---------------|----------------------------------------|
| 1 | N.M. | Medicaid 73072 | 11/6/2009 | 11/6/2009 | $898.76 | Recipient did not receive incontinence and diabetic supplies.   Signatures were forged on delivery ticket and Title XIX form. |
| 2 | M.G. | Medicaid 52894 | 9/20/2010 | 9/23/2010 | $316.68 | Recipient did not receive incontinence supplies. Doctor's signature was forged on Title XIX form. |

| Count | Patient | Last 5 Digits of Patient Medicaid Number | Date of Alleged Service (On or about) | Date Billed (On or about) | Amount Billed | Reason Claim Was False and Fraudulent |
|---|---|---|---|---|---|---|
| 3 | S.A. | Medicaid 38599 | 12/27/2010 | 2/3/2011 | $343.68 | Recipient did not receive incontinence supplies. Signatures were forged on delivery ticket and Title XIX form. |
| 4 | B.G. | Medicaid 50084 | 2/20/2011 | 2/24/2011 | $343.68 | Recipient did not receive incontinence supplies. Doctor's signature was forged on Title XIX form. |
| 5 | T.C. | Medicaid 38600 | 2/27/2011 | 3/2/2011 | $319.68 | Recipient did not receive incontinence supplies. Signatures were forged on delivery ticket and Title XIX form. |
| 6 | J.S. | Medicaid 48887 | 5/12/2011 | 5/12/2011 | $256.98 | Recipient did not receive incontinence supplies. Signatures were forged on delivery ticket and Title XIX form. |
| 7 | J.A. | Medicaid 38601 | 8/4/2011 | 8/8/2011 | $256.98 | Recipient did not receive incontinence supplies. Signatures were forged on delivery ticket and Title XIX form. |

All in violation of Title 18, United States Code, Section 1347.

## COUNT EIGHT
## AGGRAVATED IDENTITY THEFT

22.    The Grand Jury incorporates by reference paragraphs 1 through 19 as though fully restated and re-alleged herein.

23.    Beginning on or about December 1, 2007 through November 30, 2011, the exact

dates being unknown to the Grand Jury, in the McAllen Division of the Southern District of Texas

and elsewhere, the defendant,

**WILLIE CHESTER MITCHELL**

during and in relation to a felony violation of Title 18, United States Code, Section 1347, Health

Care Fraud, did knowingly transfer, possess, or use, without lawful authority, a means of

identification of another person, including but not limited to the following:

| Count | Patient | Last 5 Digits of Patient Medicaid Number | Date of Alleged Service (On or about) | Date Billed (On or About) | Amount Billed | Reason Claim Was False and Fraudulent | Means of ID Used Without Lawful Authority on False and Fraudulent Claim |
|---|---|---|---|---|---|---|---|
| 8 | N.M. | Medicaid 73072 | 11/6/2009 | 11/6/2009 | $898.76 | Recipient did not receive incontinence and diabetic supplies. Signatures were forged on delivery ticket and Title XIX form.   See Count 1. | Patient's Medicaid Number |

All in violation of Title 18, United States Codes, Section 1028A.

A TRUE BILL

_____
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
ASSISTANT UNITED STATES ATTORNEY